IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Nona Branham, | |
| Plaintiff, | No. 22 CV 00531 |
| v. | Honorable Nancy L. Maldonado |
| TrueAccord Corp., | |
| Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Nona Branham brings this lawsuit alleging that Defendant TrueAccord Corp. ("TrueAccord") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). TrueAccord has filed a motion to dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(1) for a lack of subject matter jurisdiction under Article III. (Dkt. 16.)[1] For the reasons stated in this opinion and order, the Court grants TrueAccord's motion to dismiss, and the FAC is dismissed without prejudice. As this is the Court's first time addressing the issue of subject matter jurisdiction over Plaintiff's claims, and because Plaintiff has only amended her complaint once, the Court will grant Plaintiff one more opportunity to amend her complaint if she believes she can cure the deficiencies outlined in this opinion. Plaintiff shall therefore have 21 days from the date of this order to file a motion for leave to file a second amended complaint.

### Background[2]

Plaintiff, an Illinois resident, incurred a debt that was later acquired by TrueAccord, a company with its principal office in Kansas, after the debt was in default. (Dkt. 12 ¶¶ 3, 5-7.) Plaintiff is a "consumer" as defined under the FDCPA, and at all relevant times TrueAccord was a "debt collector" as defined in the FDCPA. *Id.* ¶¶ 4, 10.

On or around October 27, 2021, Plaintiff's attorney sent a letter to TrueAccord notifying it that Plaintiff was represented by an attorney with regards to the debt. *Id.* ¶ 11. In November 2021, TrueAccord sent Plaintiff at least two emails seeking to collect the debt, despite having notice that Plaintiff was represented by an attorney. *Id.* ¶ 12. Plaintiff contends that TrueAccord violated several provisions of the FDCPA by contacting her directly after being notified that she was represented by an attorney. *Id.* ¶¶ 13, 19-26. Specifically, Plaintiff alleges that TrueAccord (1)

---

[1] Referenced page numbers are taken from the CM/ECF header.
[2] The Court takes the background from the allegations in the FAC (Dkt. 12) and assumes the allegations to be true for the purposes of the instant motion. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016).

violated FDCPA § 1692e by engaging in false, deceptive, or misleading methods to collect a debt; (2) violated FDCPA § 1692f by engaging in unfair and/or unconscionable means to collect, or attempt to collect, a debt; (3) violated FDCPA § 1692e(5) by threatening action that could not be legally taken or that TrueAccord did not intend to take; and (4) violated FDCPA § 1692c(a)(2) by communicating with a consumer after being notified that the consumer was represented by an attorney. *Id.* ¶¶ 19-26.

Plaintiff alleges that as a direct and proximate result of TrueAccord's actions, Plaintiff "suffered actual financial harm and monetary losses." *Id.* ¶ 14. Specifically, Plaintiff alleges that TrueAccord's "misleading statement . . . impinged on the Plaintiff's choice how to proceed to respond to the Defendant's collection attempt." *Id.* ¶ 15. Plaintiff further alleges that TrueAccord's actions caused her undue stress and anxiety, as well as "wasted time, annoyance, emotion [sic] distress, monetary losses, and informational injuries." *Id.* ¶¶ 17-18. Plaintiff also alleges that she suffered "a risk of real harm that was sufficiently concrete, because the harm bears a close relationship to . . . invasion of privacy, abuse of process, intentional infliction of emotional distress, [and] negligent misrepresentation." *Id*. ¶ 16. Plaintiff seeks actual and statutory damages, and an award of attorneys' fees and costs. *Id.* ¶ 28.

After being served with the original complaint, TrueAccord filed a motion to dismiss for lack of subject matter jurisdiction. (Dkt. 7.) Plaintiff exercised her right pursuant to Rule 15(a)(1)(B) to amend her complaint in lieu of responding to the motion. (Dkt. 12.) TrueAccord has now moved to dismiss Plaintiff's FAC pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. (Dkt. 16.) Specifically, True Accord contends that Plaintiff lacks Article III standing to bring her claim because she fails to allege a concrete, particularized injury redressable by the Court. *Id.* at 1.

## Legal Standards

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When, as here, a defendant makes a facial challenge to the sufficiency of the allegations regarding subject matter jurisdiction, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). However, "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Id.* at 588-89.

A federal court has subject matter jurisdiction over a claim only if the plaintiff has Article III standing. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co*., 935 F.3d 573, 581 (7th Cir. 2019). "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560).

For an injury to be concrete, it must be "real, and not abstract." *Id.* (internal quotation marks omitted). "Tangible harms, like physical or monetary harms, 'readily qualify as concrete injuries.'" *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1190 (7th Cir. 2021) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)). Intangible harms can also be concrete where the alleged injuries have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Ramirez*, 141 S. Ct. at 2204 (citations omitted). This includes, for example, "reputational harms, disclosure of private information, and intrusion upon seclusion," along with those harms "specified by the Constitution itself." *Id.*

Finally, it is important to note that a plaintiff does not automatically satisfy the injury-in-fact requirement merely because she asserts a claim for a statutory violation. *See Spokeo, Inc.*, 578 U.S. at 341. "Article III standing requires a concrete injury even in the context of a statutory violation," and a "bare procedural violation, divorced from any concrete harm," does not suffice. *Id.*

## Discussion

TrueAccord argues that Plaintiff's FAC should be dismissed for lack of subject matter jurisdiction because Plaintiff's alleged injuries are insufficient to support Article III standing. (Dkt. 16 at 3-4.) TrueAccord maintains that the Plaintiff's alleged psychological harms—her alleged stress, anxiety, confusion, annoyance, and emotional distress—are abstract harms which the Seventh Circuit has held do not constitute concrete injuries establishing Article III standing to bring an FDCPA claim. *Id.* at 4. Regarding Plaintiff's assertions of monetary damages and wasted time, TrueAccord argues that Plaintiff's allegations are conclusory and therefore insufficient to confer standing. *Id.* at 5-6. Similarly, TrueAccord argues that Plaintiff's assertions of risks of harms which bear a close relationship to "invasion of privacy, abuse of process, intentional infliction of emotional distress, [and] negligent misrepresentation," are "nothing more than rhetoric," and are insufficient on their own to confer standing. *Id.* The Court will address each argument, and Plaintiff's corresponding allegations, in turn. Ultimately, the Court agrees that none of Plaintiff's alleged injuries are sufficiently concrete to establish Article III standing.

First, regarding Plaintiff's alleged psychological harms, TrueAccord is correct that the Seventh Circuit has been explicit that such intangible harms do not constitute concrete injuries for the purposes of Article III standing under the FDCPA:

> As our bevy of recent decisions on FDCPA standing makes clear, *anxiety* and embarrassment are not injuries in fact. Indeed, we have expressly rejected "*stress*" as constituting concrete injury following an FDCPA violation. Likewise, it is not enough for a plaintiff to be "*annoyed*" or "intimidated" by a violation. Nor is it enough for a plaintiff to experience "infuriation or disgust" or "a sense of indignation." Likewise, a plaintiff's "*state of confusion*" resulting from an FDCPA-deficient communication, without any ensuing detriment, is not a concrete injury for if it were, then everyone would have standing to litigate about everything. These are quintessential abstract harms that are beyond our power to remedy.

3

*Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (internal citations omitted) (emphasis added). The Court is bound by this controlling Seventh Circuit precedent, and therefore finds that Plaintiff's allegations of stress, anxiety, confusion, annoyance, and emotional distress do not amount to a concrete injury as required for Article III standing. *See, e.g., Simpson v. Revco Sols., Inc.*, No. 22-CV-00483-JPG-1, 2022 WL 17582742, at *3 (S.D. Ill. Dec. 12, 2022) (holding that nearly identical alleged psychological injuries are not sufficiently concrete for Article III standing under controlling Seventh Circuit precedent).

In *Simpson*,[3] an FDCPA case from the Southern District of Illinois involving similar claims and nearly identical alleged psychological injuries arising from a creditor's communication to a represented debtor, the court noted that it is possible for intangible psychological harms to be concrete when the harm "manifests itself physically" or when the plaintiff acts "to her detriment" based on her emotional distress or confusion. *See id.* (citations omitted). But, similar to *Simpson*, where the court found the plaintiff's psychosocial injuries did not confer standing, Plaintiff here has not alleged that the psychological harms she experienced manifested physically or caused any diagnosed medical issues. *See id.* (citing *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) ("Nor does stress by itself with no physical manifestations and no qualified medical diagnosis amount to a concrete harm."); *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 616 (7th Cir. 2015) (noting that "purely psychological harm" does not suffice to establish Article III standing)). And while Plaintiff alleges that TrueAccord's "misleading statement . . . impinged on the Plaintiff's choice how to proceed to respond to the Defendant's collection attempt," she does not allege that her impinged choice, or her alleged confusion from the communication, caused her to take any action to her detriment, such as paying a debt she did not owe or making a payment on unfavorable terms. *See Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020) (noting that confusion may be a concrete injury if the debtor "acts, to her detriment, on that confusion—if, for example, the confusion leads her to pay something she does not owe, or to pay a debt with interest running at a low rate when the money could have been used to pay a debt with interest running at a higher rate. But the state of confusion is not itself an injury.").[4]

Plaintiff does not address TrueAccord's arguments related to her psychological injuries, or the controlling caselaw from the Seventh Circuit finding that such harms are insufficient to confer standing. As TrueAccord notes in its reply, Plaintiff's failure to address this argument could, on its own, constitute a waiver. (Dkt. 20 at 3 (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.")).) But even setting aside the issue of waiver, it is well-established under the controlling caselaw cited above that Plaintiff's alleged psychological injuries, without any associated allegations of physical manifestation or that plaintiff acted to her detriment, are insufficient to confer standing.

---

[3] The *Simpson* case was decided after the parties completed briefing on the motion to dismiss, although TrueAccord filed a notice of supplemental authority citing to the decision. (Dkt. 22.) While such notices of supplemental authority are traditionally reserved for apprising the Court of subsequent controlling authority, the Court may still rely on *Simpson* for support to the extent it finds the court's reasoning persuasive.

[4] To the extent that Plaintiff alleges she "detrimentally relied on the Defendant's misleading statements in the communications," (Dkt. 12 ¶ 18), the allegation is conclusory and Plaintiff does not provide any facts explaining how she acted to her detriment. As explained further herein, such a bare, conclusory allegation is insufficient.

Second, the Court turns to Plaintiff's allegations of financial harm. Plaintiff alleges that she suffered "actual financial harm and monetary losses." (Dkt. 12 ¶ 14.) While monetary harms typically qualify as tangible, concrete harms, *see Persinger*, 20 F.4th at 1190, vague or conclusory allegations of financial loss are insufficient to confer standing. *See generally Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589 (7th Cir. 2016) ("Legal conclusions or bare and conclusory allegations, however, are insufficient to state a claim."); *see also Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (holding that a single reference to "actual damages" in the prayer for relief in a complaint did not establish Article III standing). Accordingly, district courts in the Seventh Circuit regularly find that vague and conclusory assertions of financial or monetary harm are insufficient to demonstrate a concrete injury for purposes of Article III standing. *See, e.g.*, *Hall v. Altus Legal, LLC*, No. 20-CV-5539, 2021 WL 4243510, at *2 (N.D. Ill. Sept. 17, 2021) (holding that plaintiff lacked standing to bring FDCPA claim where the "complaint merely makes vague reference to emotional distress, embarrassment, reputational damage, and *financial harm* caused by defendant's conduct") (emphasis added); *Simpson*, 2022 WL 17582742 at *3 (finding that the plaintiff's identical allegation of "actual financial harm and monetary losses" was vague and did not provide the Court with "well-pleaded allegations to find concrete tangible economic harm"); *see also Sanchez v. Johnson, Blumberg & Assocs., LLC*, No. 16-CV-07056, 2018 WL 3861562, at *5 (N.D. Ill. Aug. 14, 2018) (finding that plaintiff lacked standing under the Real Estate Settlement Procedures Act, which the court noted has a similar injury requirement as is required for standing under Article III, because the plaintiff made only conclusory allegations of economic harm and monetary loss, and "conclusory statements devoid of any factual allegations indicating how the plaintiff was damaged by the alleged unlawful conduct are insufficient").

Here, Plaintiff's FAC is devoid of any specific allegations of monetary or financial harms that are sufficient for the Court to find a concrete tangible injury as is required for Article III standing. Again, Plaintiff does not allege that she paid a debt she did not owe, or that she incurred monetary losses because she made payments under unfavorable terms. Nor does Plaintiff provide any allegations describing, even in approximate terms, what kinds of financial or monetary losses she experienced. Without more, Plaintiff's vague and conclusory allegations that she experienced financial harm and monetary losses are insufficient to plead a concrete injury. *See, e.g.*, *Diedrich*, 839 F.3d, at 589.

In her response brief, Plaintiff claims in passing that TrueAccord's communications "caused Plaintiff to incur additional attorney fees," (Dkt. 19 at 7-8), but this also does not establish standing. The Supreme Court has held as a general matter that an "interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit.") (citation omitted); *see also Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 881 (7th Cir. 2020) (noting that "[a] contrary rule would essentially eliminate the injury and redressability requirements of Article III standing"). Therefore, to the extent that Plaintiff points to any attorney's fees she incurred consulting with a lawyer in connection with the allegedly wrongful communications and the instant lawsuit, those fees do not constitute an independent injury for purposes of Article III standing. *See Simpson*, 2022 WL 17582742 at *3 ("Courts within this circuit have also addressed this type of harm and determined it does not confer a concrete harm.") (citing

5

*Brunett*, 982 F.3d at 1069 ("A desire to obtain legal advice is not a reason for universal standing.")).

Third, Plaintiff's allegations that she suffered damages in the form of "wasted time" and "informational injuries" are—like her allegations of financial harm—vague and conclusory and therefore insufficient to confer standing. Plaintiff does not explain how the email communications led to wasted time or how that wasted time caused her any detriment, financial or otherwise. The allegation of wasted time thus strikes the Court as akin to a generalized claim of "annoyance" which, as noted above, is not sufficient to confer standing. *See Wadsworth*, 12 F.4th at 668; *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1072 (7th Cir. 2020) ("No one can doubt that the plaintiff in *Spokeo* was sore annoyed. If that were enough, however, then the very fact that a suit had been filed would show the existence of standing, and the need to have a concrete injury that could be cured by a favorable judicial decision would be abolished."). To the extent Plaintiff is referring to wasted time in needing to consult with her attorney about the communications, several courts in this district have found such allegations insufficient to confer standing for the same reasons that incurring attorney's fees in connection with filing suit is not an independent concrete injury. *See, e.g.*, *Simpson*, 2022 WL 17582742, at *4 ("Simpson's allegations of harm related to her wasted time to get an attorney does not confer standing. Litigation, and consulting a lawyer, is a cost in any litigation and this Court, in line with cases within this circuit, finds it is not enough to show the existence of standing."); *Mack v. Resurgent Cap. Servs., L.P.*, No. 18 C 6300, 2021 WL 3910747, at *3 (N.D. Ill. Sept. 1, 2021) ("Mack's injury—spending time and money in an attempt to clear up her confusion concerning whether she had validly disputed the debt—is analogous to injuries arising from consultations with lawyers or filing suit, which the Seventh Circuit has held do not amount to concrete harm."). Regarding the informational injury, Plaintiff does not indicate any consequences from the informational injury, or that she took any actions to her detriment. The alleged injury thus does not satisfy Article III. *Ramirez*, 141 S. Ct. at 2214 ("[An] asserted informational injury that causes no adverse effects cannot satisfy Article III."). Plaintiff's allegations that she experienced an informational injury and wasted time are therefore insufficient to confer standing.

Finally, Plaintiff argues that her FAC adequately alleges a harm recognizable at common law, which she claims is sufficient to satisfy Article III. (Dkt. 19 at 5.) Specifically, Plaintiff argues that TrueAccord committed the tort of invasion of privacy when it contacted her despite knowing she had an attorney, and she thus maintains that she has alleged a harm that bears a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts—invasion of privacy—which is sufficient to establish a concrete injury as required for standing. *Id.* at 7-10.

It is important to note, however, that Plaintiff does not actually allege a direct invasion of privacy as she suggests in her briefing. Instead, what Plaintiff has alleged is a "*risk* of real harm" that bears a close relationship to, among other things, invasion of privacy. (Dkt. 12 ¶ 16 (emphasis added).) But the Supreme Court held in *Ramirez* that "the mere risk of future harm, without more, cannot qualify as a concrete harm in a suit for damages." *Ramirez*, 141 S. Ct. at 2197; *see also Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 938 (7th Cir. 2022) (explaining that, under *Ramirez*, "a risk of harm qualifies as a concrete injury only for claims for forward-looking, injunctive relief to prevent the harm from occurring. . . . [But a] plaintiff seeking money damages

6

has standing to sue in federal court only for harms that have in fact materialized.") (citations omitted). Therefore, to the extent Plaintiff alleges only a *risk* of harm caused by the email communications, that risk alone is plainly insufficient for Article III standing. *See Pierre*, 29 F.4th at 939 (plaintiff did not have standing where she argued in part that a deceptive letter from a creditor carried "a risk that she might make a payment on a time-barred debt," because the plaintiff did not make any payment or otherwise act to her detriment in response to the letter, and the "risk of harm" was not enough for standing).

TrueAccord argues in its reply brief that even if Plaintiff had explicitly alleged an actual invasion of privacy, as opposed to a mere risk, there would still be no standing. (Dkt. 20 at 2.)[5] After the Supreme Court issued its decision in *Ramirez*, the Seventh Circuit clarified that where an FDCPA plaintiff alleges an "invasion of privacy" as the common law analog for the purposes of Article III standing, the court "must look behind this allegation to determine whether the challenged conduct bears a 'close relationship' to the tort." *Persinger*, 20 F.4th at 1191. The Seventh Circuit noted that the tort of invasion of privacy traditionally "encompassed four theories of wrongdoing: intrusion upon seclusion, appropriation of a person's name or likeness, publicity given to private life, and publicity placing a person in a false light." *Id.* at 1192. Here, while Plaintiff's complaint refers to a general "invasion of privacy," her response brief does identify intrusion upon seclusion as the relevant privacy harm. (Dkt. 19 at 5-6, 9-10.) Indeed, as TrueAccord notes in its reply, intrusion upon seclusion is the only potentially applicable theory of wrongdoing, as Plaintiff has not alleged or suggested that TrueAccord appropriated Plaintiff's name or likeness or publicized any of her information. (Dkt. 20 at 2.)

The question is therefore whether Plaintiff's receipt of the two emails from TrueAccord, after TrueAccord was notified she was represented by an attorney, represents a harm analogous to the common law tort of intrusion upon seclusion. As the Seventh Circuit noted in *Persinger*, "*Spokeo* and *Ramirez* make clear our responsibility to look for a close relationship 'in kind, not degree.'" *Persinger*, 20 F.4th at 1192. Therefore, whether or not Plaintiff could ultimately prevail on a common-law intrusion upon seclusion claim is irrelevant. *Id.* Rather, "[i]t is enough to say that the harm alleged in her complaint resembles the harm associated with intrusion upon seclusion." *Id.* Intrusion upon seclusion occurs when a person "intrudes . . . upon the solitude or seclusion of another or his private affairs or concerns" and this "intrusion would be highly offensive to a reasonable person." *See id.* (citing Restatement (Second) of Torts §§ 652A–652E (Am. L. Inst. 1977)).

To support the proposition that her injury is analogous to intrusion upon seclusion, Plaintiff relies exclusively on a case from the Tenth Circuit Court of Appeals, *Lupia v. Medicredit, Inc.*, which involved a similar dispute over the plaintiff's Article III standing for her FDCPA claim. *See* 8 F.4th 1184, 1191-92 (10th Cir. 2021). The plaintiff in *Lupia* alleged that a creditor violated the FDCPA by calling her and leaving a voicemail about a debt after the creditor had received written

_____

[5] In determining whether Article III standing exists, "allegations matter." *See Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1245-46 (7th Cir. 2021). Therefore the Court could end its analysis on the point that all Plaintiff has actually alleged is a "risk of harm" akin to an invasion of privacy. But as the Court will be allowing Plaintiff a final opportunity to amend the complaint, the Court finds it appropriate to address the issue of whether an allegation of an actual invasion of privacy, based on the same facts, would be sufficient for standing. This is particularly appropriate given that, as explained further herein, the Court agrees that even an express allegation of an invasion of privacy on these same facts would not demonstrate a concrete injury for the purposes of Article III standing.

notice requesting that it cease calling. *Id.* at 1188. The plaintiff alleged that the call caused her to "suffer intangible harms, which Congress has made legally cognizable in passing the FDCPA." *Id.* at 1191. The Tenth Circuit affirmed the finding of the district court that this allegation, along with the circumstances of the alleged injury, was sufficient to establish Article III standing. *Id.* at 1191-92. The court noted that the Supreme Court in *Ramirez* had recognized that "intrusion upon seclusion" was a harm "traditionally recognized as providing a basis for [a] lawsuit[] in American courts," and the Tenth Circuit found that *Lupia* had alleged a similar type of injury to that tort based on her allegation of receiving an unwanted call. *Id.* at 1191. The Tenth Circuit recognized that "a single phone call may not intrude [on plaintiff's privacy] to the degree required at common law, [but] that phone call poses the same *kind* of harm recognized at common law—an unwanted intrusion into a plaintiff's peace and quiet." Thus the harm the plaintiff suffered bore a "close relationship" to an injury long recognized at common law, which was sufficient for standing. *Id.*

Plaintiff argues that the facts here are "strikingly similar to *Lupia*," and asserts that TrueAccord's communications to Plaintiff after being notified she had an attorney, like the phone call in *Lupia*, establishes a harm that bears a close relationship to intrusion upon seclusion, which is sufficient to establish Article III standing. (Dkt. 9-10.) TrueAccord, on the other hand, argues that the mere receipt of emails cannot be said to be "highly offensive" to a reasonable person, and argues that *Lupia*, an out-of-circuit and non-binding opinion, is distinguishable because emails are different from phone calls or text messages, the latter of which are often heard and can support an intrusion upon a plaintiff's peace and quiet. (Dkt. 20 at 2-3.)

The Court agrees with TrueAccord that the receipt of two emails is not sufficiently analogous or "closely related" to the tort of intrusion upon seclusion to demonstrate Article III standing. Plaintiff notably does not point the Court to any FDCPA caselaw where a court held that the receipt of one or two unwanted written or email communications from a debtor was sufficient on its own to confer standing, let alone a case holding that the mere receipt of such communications is "highly offensive" to a reasonable person. Instead, Plaintiff relies on *Lupia* from the Tenth Circuit, a case which involved a phone call and voice message. The Court acknowledges that, while *Lupia* is non-binding authority, other decisions from the Seventh Circuit have similarly suggested that phone calls, text messages, and even faxes, are sufficiently intrusive on an individual's peace and quiet to constitute a concrete injury for standing purposes. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 n.1 (7th Cir. 2020) ("The undesired buzzing of a cell phone from a text message, like the unwanted ringing of a phone from a call, is an intrusion into peace and quiet in a realm that is private and personal. This is the very harm that Congress addressed."); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020) ("Pestiferous text messages, spam phone calls, and unwelcome faxes can cause cognizable injury, for the reasons we gave in *Gadelhak* when explaining how the common law treats noises and other aggravating intrusions."); *see also Atkins v. Healthcare Revenue Recovery Grp., LLC*, No. 21 CV 2408, 2023 WL 22138, at *4 (N.D. Ill. Jan. 3, 2023) ("[R]epeated and intrusive calls are analogous to intrusion upon seclusion . . . .").

However, the Court finds that the intrusion caused by the receipt of two unwanted email communications is distinct from the intrusion caused by the receipt of phone calls and text messages. The Seventh Circuit in *Gunn,* for example, expressly distinguished the receipt of a written letter with the receipt of phone calls and text messages, noting that the latter

communications can cause a cognizable injury, given the way the "common law treats noises and other aggravating intrusions." *Gunn*, 982 F.3d at 1071; *see also Simpson*, 2022 WL 17582742 at *5 (finding that the receipt of a letter did not intrude on plaintiff's seclusion sufficient for standing because "*Lupia* dealt with a phone call and voicemail, which is similar to the type of cases that the Seventh Circuit has determined intrudes into the peace and quiet of private and personal, instead of a letter like the case at hand"). Receiving an email is generally more akin to receiving a letter than to receiving phone calls or text messages. The Court imagines there may be some circumstances where the receipt of numerous emails could create an intrusion on an individual's peace and quiet akin to the kind of intrusion caused by the receipt of "pestiferous" phone calls and text messages which courts have found sufficient to create standing. But Plaintiff here has made no allegations suggesting any such intrusion; she merely alleges that she received at least two emails and that those two emails created a "risk" of an invasion of privacy. Without more, the Court agrees with TrueAccord that these allegations do not suggest an intrusion that is "highly offensive" to a reasonable person such that Plaintiff's injury is analogous to the tort of intrusion upon seclusion. *See id.* ("The Court finds that the cases within this circuit indicate a letter after advisement of lawyer representation does not point to an intrusion upon seclusion.").

The Court understands that receiving an unwanted communication from a debtor can be a frustrating and stressful experience. Indeed, the FDCPA was enacted to protect consumers from abusive and intrusive collection practices. But whether or not TrueAccord's communications violated the FDCPA, the Supreme Court has held that statutory violations on their own are not enough to satisfy the concrete injury requirement for Article III standing. On review of the parties' briefing and the caselaw exploring what kinds of injuries satisfy this requirement in the context of the FDCPA, the Court concludes that Plaintiff has not alleged the requisite concrete harm for Article III standing under the FDCPA. In the absence of such a harm, Plaintiff lacks standing to pursue her claims.

In sum, Plaintiff lacks Article III standing and the Court therefore does not have subject matter jurisdiction to resolve the case. The FAC must therefore be dismissed without prejudice. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1013 (7th Cir. 2021) ("A jurisdictional dismissal is without prejudice . . . ."). Although Plaintiff has not expressly asked for leave to amend, the Court finds it appropriate to allow Plaintiff one final opportunity to amend her complaint, if she believes she can remedy the issues outlined in this order.

## Conclusion

For all the foregoing reasons, TrueAccord's motion to dismiss is granted and the First Amended Complaint is dismissed without prejudice due to a lack of subject matter jurisdiction. Plaintiff shall have 21 days from the date of this order to file a motion for leave to file a second amended complaint if she believes she can remedy the deficiencies identified in this opinion. The motion must attach a redline of the complaint showing any changes, and must be accompanied by a brief identifying how the proposed amendment would cure the identified deficiencies. If Plaintiff does not file a motion seeking leave to amend by the deadline, the case will be dismissed.

ENTERED: 3/28/23

_____
Nancy L. Maldonado
United States District Court Judge